UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EVERGREEN CHEVROLET, LLC,

          Plaintiff,

   v.

GRANITE STATE INSURANCE COMPANY,

          Defendant.

No. C20-1674RSL

ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendant Granite State Insurance Company's Motion for Partial Summary Judgment" (Dkt. # 12) and "Plaintiff's Motion for Summary Judgment" (Dkt. # 14). Evergreen Chevrolet, LLC, is an automobile dealership. When the engine of a car it sold failed, the purchaser sued, asserting claims of negligence, breach of contract, and statutory violations. Evergreen's insurer, Granite State Insurance Company, provided a defense, and the case proceeded to arbitration. The arbitrator awarded the purchaser damages, and the parties were awaiting a decision regarding attorney's fees when Granite issued a letter denying coverage. The final arbitration award against Evergreen totaled $216,878.93. Evergreen filed this lawsuit seeking a declaration of coverage and asserting claims of breach of contract, insurance bad faith, violations of the Washington Consumer Protection Act ("CPA"), and violations of the Insurance Fair Conduct Act ("IFCA"). Granite seeks dismissal of all of

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT

plaintiff's causes of action.[1] Evergreen seeks summary judgment on its breach of contract and declaratory judgment claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

---

[1] In its response to the motion for summary judgment, Evergreen concedes that there is no coverage for the CPA claim under the Commercial General Liability Coverage. Dkt. # 20 at 7.

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -2-

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the evidence in the light most favorable to the non-moving party, the Court finds as follows:

## BACKGROUND

On or about February 9, 2018, Nicole Benson and her mother, Toni Benson, purchased a used 2011 Mitsubishi Lancer from Evergreen. The engine failed a month later. The Bensons filed a lawsuit alleging that various modifications had been made to the car by the previous owner consistent with off-road competitive racing of the vehicle, that the modifications caused the engine failure, and that Evergreen had withheld information about the modifications before and after the sale of the vehicle. The arbitrator found that the previous owner had disclosed that the car had been used for racing and that Evergreen was aware of the modifications at the time it purchased the vehicle on January 25, 2018. Evergreen did not, however tell the Bensons about the modifications or the racing. The arbitrator further found that the engine failure "resulted from the substantial modifications to the car for high performance driving and racing of which Nicole Benson knew nothing." Dkt. # 13-1 at 9.

## DISCUSSION

**A. Declaratory Judgment and Breach of Contract**

As mentioned above, Granite provided Evergreen a defense in the arbitration, so its duty to defend is not an issue in this case. Whether Granite owes a duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden v. Mutual of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (2000). Thus, the issue is whether the policy covers the liability established in the final arbitration award. "A determination of coverage involves two

---

[2] This matter can be decided on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT         -3-

steps: first, '[t]he insured must show the loss falls within the scope of the policy's insured losses.' Then, in order to avoid coverage, the insurer must 'show the loss is excluded by specific policy language.'" *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 272 (2011) (citations omitted).

### 1. GARAGE COVERAGE FORM

In exchange for a premium of $423,643.00, Granite provided GARAGE COVERAGE to Enterprise for the policy period August 1, 2017, to June 1, 2018. Dkt. # 13-4 at 3. The GARAGE COVERAGE FORM includes Granite's promise to pay all sums Evergreen "legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos.'" Dkt. # 13-4 at 71. "Garage operations" is defined as the ownership, maintenance or use of locations and autos for garage business as well as "all operations necessary or incidental to a garage business." Dkt. # 13-4 at 84. "Property damage" means "damage to or loss of use of tangible property." Dkt. # 13-4 at 85. Pursuant to the relevant policy provision, the property damage must have been caused by an accident. For purposes of the GARAGE COVERAGE FORM, the term "accident" "includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" Dkt. # 13-4 at 83.

#### a. "Garage Operations"

Granite asserts that Evergreen's liability to the Bensons arose from the sale of a vehicle and its activities as a dealership, not from its operation of a garage business. But the two are not mutually exclusive in the circumstances presented here. It was Evergreen's service technician who looked under the hood of the Mitsubishi and noted the after-market modifications, including "exhaust, turbo, cooling, intake, susp etc." Dkt. # 13-1 at 7. The dealership's garage performed some maintenance on the vehicle (it changed the oil and oil filter, replaced the wiper blades, and considered purchasing new tires for the vehicle) but it opted not to replace any of the

after-market parts before putting the car up for sale. Dkt. # 13-1 at 7. The arbitrator found that the dealership both failed to disclose material information to the buyers and sold a "used car [that] was not fit for the ordinary purpose of driving." Dkt. #13-1 at 10. Because Evergreen's liability arose, at least in part, from the maintenance of a covered auto,[3] it arose from "garage operations" as defined in the GARAGE COVERAGE FORM.

### b. "Accident"

The word "accident" is largely undefined in the policy. The Court therefore looks to the common law definition of the term. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 401 (1992). In *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99 (1988), the Washington Supreme Court held that "an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual." 110 Wn.2d at 104 (citation omitted). Under the common law definition, "a reasonably foreseeable harm resulting from deliberate conduct is not an 'accident.'" *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 756 (2013).

Evergreen argues that its failure to disclose the modifications to the Bensons was simply an inadvertent mistake, with no intent to deceive or mislead. But the failure to disclose is not an independent happening that interrupts the causal chain between Evergreen's intentional acts and the harm that actually occurred. "[W]here the insured acts intentionally but claims that the result was unintended, the incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable." *State Farm Fire & Cas. Co. v. Peters*, 142 Wn. App. 6, 17 (2007). Here, the conduct that falls

---

[3] In its motion, Granite did not argue that the Mitsubishi Lancer was not a covered auto. While it may not have conceded that point for all purposes, it cannot raise a new argument in reply.

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -5-

within the GARAGE COVERAGE provision is the work done on the Mitsubishi Lancer, which included the intentional decision not to replace any of the after-market parts before selling the vehicle to the Bensons. Even accepting Evergreen's argument that it did not subjectively intend to deceive the Bensons because information regarding the extent and nature of the modifications did not make it to the salesperson with whom the Bensons negotiated, Evergreen intentionally chose to retain the after-market parts and "sell a used car [that] was not fit for the ordinary purpose of driving." Dkt. #13-1 at 10. Evergreen's intentional actions foreseeably resulted in the failure of the Mitsubishi Lancer when it was used for its intended purpose. There is no coverage for Evergreen's conduct under the GARAGE COVERAGE because the result of Evergreen's intentional conduct - *i.e.*, the sale of a car that was unfit for normal driving - was reasonably foreseeable and therefore not an "accident" under Washington law. *See Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 401 (1992); *Roberts*, 179 Wn. App. at 756–57.

### 2. GARAGE EXTENSION ENDORSEMENT

The GARAGE EXTENSION ENDORSEMENT modifies the insurance provided by the GARAGE COVERAGE FORM. Evergreen cites to modifications of two of the exclusions found in the GARAGE COVERAGE FORM (Dkt. #13-4 at 62-63), arguing that they give rise to coverage. But Evergreen's claim for coverage under that the GARAGE COVERAGE FORM fails because there was no accident, not because the Court found that the "Defective Products" or "Work You Perform" exclusions apply. Any modification to the scope of the exclusions cannot create coverage that does not otherwise exist under the GARAGE COVERAGE FORM.

Evergreen also relies on an additional liability coverage offered under the GARAGE EXTENSION ENDORSEMENT related to "Automobile Dealers Legal Defense and Product Related Damages." Dkt. #13-4 at 65. Granite concedes that the product related damages claimed by the Bensons fall within the extended coverage, but argues that an exclusion for "[a]ny damages caused by any willful, dishonest, fraudulent, intentional or criminal act committed by

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT         -6-

the 'insured'" applies. Dkt. #13-4 at 65.[4] Exclusionary provisions are deemed to be contrary to the fundamental purpose of an insurance policy and are therefore narrowing and strictly construed against the insurer. *Wash. Pub. Util. Dists.'Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn.2d 1, 16–17 (1989) (citations omitted); *Port of Seattle v. Lexington Ins. Co.*, 111 Wn. App. 901, 908 (2002). "If exclusionary language is ambiguous, it is proper to construe the effect of such language against the drafter." *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733 (1992) (citation omitted). Washington courts may interpret the same language differently depending on "whether the language is set forth in an inclusionary section granting coverage or an exclusion to that coverage." *Pac. Ins. Co. v. Cath. Bishop of Spokane*, 450 F. Supp. 2d 1186, 1201 (E.D. Wash. 2006) (quoting Thomas V. Harris, WASHINGTON INSURANCE LAW, § 21–2 (1995)).

Granite focuses on the word "dishonest" in the exclusion.[5] The policy does not define the term, and "[u]ndefined terms within a policy are to be given their 'plain, ordinary, and popular meaning.'. . . In determining this meaning, the Court may reference standard English language dictionaries." *Nguyen v. Travelers Cas. Ins. Co. of Am.*, 541 F. Supp. 3d 1200, 1214 (W.D. Wash. 2021) (citations omitted). A term is ambiguous where "it is susceptible to more than one reasonable interpretation." *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 756 (2010). Granite points out that the arbitrator found that Evergreen's failure to inform the Bensons of the vehicle's after-market modifications and racing history was "deceptive and misleading" and argues that a deceptive act is tantamount to a dishonest act. The Oxford English Dictionary

---

[4] Granite also points out that the Product Related Damages coverage has a $25,000 limit with a $10,000 deductible. Dkt. #13-4 at 25.

[5] In its motion, Granite argues that the fraud and implied warranty exclusions also abrogate any coverage that would otherwise be available under the GARAGE EXTENSION ENDORSEMENT. It abandoned these arguments in reply.

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT          -7-

defines a dishonest act as "discreditable as being at variance with straightforward or honourable dealing, underhand; now, fraudulent, thievish, knavish." The Merriam-Webster Dictionary posits that the word "implies a willful perversion of truth in order to deceive, cheat, or defraud." Both definitions and three of the four other acts excluded from the Product Related Damages coverage all involve a subjective intent to mislead. *See Snohomish Cnty. v. Allied World Nat'l Assurance Co.*, 276 F. Supp. 3d 1046, 1062 (W.D. Wash. 2017) ("The Court agrees with the County that this exclusion is intended to address crimes or acts of willful dishonesty or fraud, none of which are alleged here.").

In contrast, an act or practice can be deceptive for purposes of the Washington Consumer Protection Act - the claim the arbitrator was discussing when he found that Evergreen had made deceptive and misleading statements to the Bensons - even if there was no intent to deceive. *State v. Living Essentials, LLC*, 8 Wn. App. 2d 1, 15–16 (2019); *State v. Kaiser*, 161 Wn. App. 705, 719 (2011).[6] While the Court recognizes that "deception" can, in some circumstances, involve concepts of deliberate and willful trickery, *see* Black's Law Dictionary 510 (11th ed. 2019), Washington courts have made clear that liability under the CPA for deceptive and misleading conduct may exist without such intent. The arbitrator's finding on which Granite relies may, therefore connote no more than negligence as opposed to willfulness, dishonesty, fraud, or intent. Granite has not shown that the exclusion abrogates the coverage available under the GARAGE EXTENSION ENDORSEMENT.

**3. COMMERCIAL GENERAL LIABILITY ("CGL") COVERAGE FORM**

Under the CGL policy provisions, Granite agreed to pay those sums Evergreen becomes

---

[6] RCW 46.70.180(1) similarly prohibits "false, deceptive, or misleading" statements in the sale of a vehicle. There is no indication that an auto dealer's good faith when making a deceptive statement would preclude a finding of liability where the legislature intended to not only regulate the conduct of businesses in the State of Washington but to also "protect and preserve the investments and properties of the citizens of this state." RCW 46.70.005.

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT          -8-

legally obligated to pay as damages because of property damage arising from an "occurrence." Dkt. #13-4 at 45. "Occurrence" is defined as an "accident" for purposes of this form of coverage. Dkt. #13-4 at 59. Again, "accident" is largely undefined. For the reasons stated above in section A.1.b., the Court finds that the property damage at issue did not arise from an "accident" under Washington law because it was the foreseeable result of Evergreen's intentional decision not to replace the after-market parts before selling the car to the Bensons.

The Court finds that there is no coverage for the property damage for which Evergreen has been held liable under the GARAGE COVERAGE or the CGL COVERAGE forms, that there is coverage available under the GARAGE EXTENSION ENDORSEMENT, that Granite failed to show that an exclusion to that coverage applies, and that Granite breached the insuring agreement when it denied coverage under the GARAGE EXTENSION ENDORSEMENT.

**B. Insurance Bad Faith and the Consumer Protection Act**

A tort cause of action for the bad faith denial of coverage has been recognized by the Washington Supreme Court. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389 (1992).

> This cause of action acknowledges that the business of insurance affects the public interest and that an insurer has a duty to act in good faith. RCW 48.01.030.2 The tort of bad faith recognizes that traditional contract damages do not provide an adequate remedy for a bad faith breach of contract because an insurance contract is typically an agreement to pay money, and recovery of damages is limited to the amount due under the contract plus interest. 15A Ronald A. Anderson, *Couch on Insurance* § 56:10, at 17 (2d ed. 1983). In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded. *Wolf v. League Gen. Ins. Co.*, 85 Wn.App. 113, 122 (1997). Bad faith will not be found where a denial of coverage or a failure to provide a defense is based upon a reasonable interpretation of the insurance policy. *Transcontinental Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 470 (1988).

*Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560 (1998). A CPA claim against an insurer likewise requires a showing that the insurer acted unreasonably. *Villella v. Pub. Emps. Mut. Ins. Co.*, 106

Wn.2d 806, 821 (1986) ("An insurance company violates the Consumer Protection Act if it acts without reasonable justification in handling a claim by its insured."). To the extent Granite properly denied coverage under the GARAGE COVERAGE and CGL COVERAGE forms, its conduct cannot possibly support a bad faith or CPA claim. With regards to the denial of coverage under the GARAGE EXTENSION ENDORSEMENT, the parties agreed to delay discovery regarding the reasonableness of Granite's actions until after a coverage determination was made. The Court declines to resolve this factual dispute at this time.

**C. Insurance Fair Conduct Act ("IFCA")**

IFCA authorizes "first party claimant[s] to a policy of insurance who [are] unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW 48.30.015(1). To the extent Granite properly denied coverage under the GARAGE COVERAGE and CGL COVERAGE forms, there was no denial of coverage to which IFCA could apply. With regards to the denial of coverage under the GARAGE EXTENSION ENDORSEMENT, Granite argues that Evergreen is not a "first party claimant" because it is seeking coverage under forms that protect against liabilities to third parties, citing *Cox v. Cont'l Cas. Co.*, 2014 WL 2011238, at *5 (W.D. Wash. May 16, 2014) (J. Pechman), *aff'd* 703 F. App'x 491 (9th Cir. 2017).[7] For the reasons stated in *City of Bothell v. Berkley Reg'l Specialty Ins. Co.*, 2014 WL 5110485, at *10 (W.D. Wash. Oct. 10, 2014) (J. Lasnik), *Cedar Grove Composting, Inc. v. Ironshore Specialty Ins., Co.*, 2015 WL 3473465, at *6 (W.D. Wash. June 2, 2015) (J. Jones), *Navigators Specialty Ins. Co. v.*

---

[7] The Ninth Circuit's affirmance of *Cox's* IFCA analysis consists of a single sentence: "The policy in question is not a first party policy; thus, the Plaintiffs, standing in [the insured's] shoes, cannot be a first party claimant." 703 Fed. App'x at 497. The holding is perfunctory, fails to contain any discussion of the statutory language or legislative history, and is unpublished. "Unpublished dispositions and orders of this Court are not precedent." 9th Cir. Rule 36-3(a).

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT                -10-

*Christensen Inc.*, 140 F. Supp.3d 1097, 1101–02 (W.D. Wash. 2015) (J. Coughenour), and *Workland & Witherspoon, PLLC v. Evanston Ins. Co.*, 141 F. Supp. 3d 1148, 1150–51 (E.D. Wash. 2015) (C.J. Peterson), *Cox* was wrongly decided, confusing first-party insurance with a first-party claimant. Cases that followed *Cox* compounded the problem by eschewing the certification process to resolve the intra-district split (*Central Puget Sound Reg'l Transit Auth. v. Lexington Ins. Co.*, 2014 WL 5859321, at *3 (W.D. Wash. Nov. 11, 2014) (J. Pechman)), and by declining to consider the legislative history of IFCA (*King Cnty. v. Travelers Indem. Co.*, 2015 WL 1867098, at *1 (W.D. Wash. Apr. 23, 2015) (J. Pechman)). Evergreen's IFCA claim related to the denial of coverage under the GARAGE EXTENSION ENDORSEMENT survives.

**D. Attorney's Fees**

In *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53 (1991), the Washington Supreme Court held that "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract." Granite sought dismissal of Evergreen's claim for attorney's fees on the ground that there is no coverage available under the policy. In light of the Court's conclusion that there is coverage under the GARAGE EXTENSION ENDORSEMENT, Granite's argument fails.

//

//

//

//

For all of the foregoing reasons, the parties' motions for summary judgment are GRANTED in part and DENIED in part. Although there is no coverage under the GARAGE COVERAGE and CGL COVERAGE forms, Evergreen may pursue its contractual and extra-contractual claims related to the GARAGE EXTENSION ENDORSEMENT.

Dated this 23rd day of January, 2023.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT         -12-